

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ALK:KRA
F. #2024R00122

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 15, 2026

<u>By ECF</u>

The Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Choudhary Virk
> <u>Criminal Docket No. 24-227 (MKB)</u>

Dear Judge Brodie:

The government respectfully submits this letter in advance of the sentencing of defendant Choudhary Virk, which is scheduled for June 25, 2026, at 10:30 a.m.  For the reasons stated below, the government requests that the Court impose a sentence within the applicable Guidelines range of 87-108 months in custody.  Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth at 18 U.S.C. § 3553(a).

I.    <u>Background</u>

A.  <u>Offense Conduct</u>

In February 2023, the defendant committed a string of four violent, knifepoint robberies of taxi drivers in Brooklyn and Queens, New York.  <u>See</u> Presentence Investigation Report dated April 6, 2026 ("PSR") ¶ 8.

<u>First Robbery</u>.  On February 17, 2023, the defendant robbed Victim-1 at knifepoint.  <u>Id.</u> ¶ 9.  Victim-1, who was working as a taxi driver, was dispatched to pick up the defendant in Sunset Park, Brooklyn.  <u>Id.</u>  The defendant directed Victim-1 to take him to Brighton Beach, Brooklyn.  <u>Id.</u>  When the taxi arrived at the destination, the defendant grabbed Victim-1 by the collar, placed a knife to his neck, and said either "give me all your money" or "give me the money or I'll kill you."  <u>Id.</u>  Victim-1 handed the defendant approximately $150 in cash, and the defendant got out of the vehicle and fled the area.  <u>Id.</u>

<u>Second Robbery</u>.  Three days later, on February 20, 2023, the defendant robbed Victim-2 at knifepoint.  <u>Id.</u> ¶ 10.  Victim-2, who was working as a taxi driver, was dispatched to

pick up the defendant in Brighton Beach, Brooklyn.  Id.  The defendant directed Victim-2 to take him to Jamaica, Queens.  Id.  When the taxi approached the destination, the defendant pulled out a knife, held it to Victim-2's neck, and demanded, "give me all your shit."  Id.  Victim-2 gave the defendant about $450 in cash, and the defendant got out of the vehicle and fled the area.  Id.

Third Robbery.  Five days later, on February 25, 2023, the defendant robbed Victim-3 at knifepoint.  Id. ¶ 11.  Victim-3, who was working as a taxi driver, was dispatched to pick up the defendant in Gravesend, Brooklyn.  Id.  The defendant directed Victim-3 to take him to Jamaica, Queens.  Id.  When the taxi approached the destination, the defendant reached forward, grabbed Victim-3, put a knife to his neck, and said, "give me the money, this is a robbery."  Id.  Victim-3 then told the defendant he had only $50 and gave it to the defendant, before grabbing a bottle and hitting the defendant.  Id.  The defendant then stabbed Victim-3 multiple times, got out of the taxi, and fled on 178th Street on foot.  Id.

Victim-3 was transported in an ambulance to Jamaica Hospital Medical Center in Queens, New York, to be treated for his injuries.  As reflected in the photographs below, those injuries included significant lacerations to his arm and back and bruising to his back.

 

Victim-3 was admitted to the emergency room and administered trauma care, which included an IV, x-rays, a CT scan and other examinations (which fortunately revealed no significant internal abnormalities).  One of Victim-3's lacerations required six sutures to repair.  After approximately five hours in the emergency room, Victim-3 was discharged, and he was directed to follow up in two days for re-examination of his wounds.

Fourth Robbery.  Immediately after robbing and brutally assaulting Victim-3, the defendant robbed Victim-4 at knifepoint.  Id. ¶ 12.  Victim-4, who was working as a taxi driver, was dispatched to pick up the defendant in Jamaica, Queens, around the corner from where he stabbed and robbed Victim-3.  Id.  As Victim-4 and the defendant arrived at the intersection of 179th Street and 90th Avenue, the defendant put a knife to Victim-4's throat and said, "whatever you have, give me right now or I'll kill you."  Id.  Victim-4 handed the defendant $60 in cash, and the defendant took a dash camera from Victim-4.  The defendant got out of the vehicle and fled the area.  Id.  The following are images captured by the dashcam, which were backed up to the internet, of the defendant reaching forward to place the knife by Victim-4's neck:

2



## B. Procedural History

On March 14, 2023, the defendant was arrested by the New York City Police Department for his involvement in the above-described robbery pattern. The defendant remained in state custody until January 9, 2024, when the state dismissed the charges.[1]

On June 3, 2024, a grand jury in the Eastern District of New York returned an indictment charging the defendant with four counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), one for each of the above-described robberies. ECF No. 1. The defendant was arrested on June 24, 2024, in the Northern District of Texas and removed to this District.

On September 10, 2025, the defendant pleaded guilty, pursuant to an agreement, to Count Three of the indictment and stipulated that he committed the other three charged robberies. See ECF Minute Entry dated September 10, 2025.

## II. Sentencing Guidelines

The government agrees with the Guidelines calculated in the PSR, which mirror the estimate set forth in the parties' plea agreement and are set forth below:

Count Three: February 25, 2023 Hobbs Act Robbery

| | | |
|---|---|---|
| Base Offense Level (§ 2B3.1(a)) | | 20 |
| Plus: | Dangerous Weapon Otherwise Used (§ 2B3.1(b)(2)(D)) | +4 |
| Plus: | Victim Sustained Serious Bodily Injury (§ 2B3.1(b)(3)(B)) | +4 |
| Total: | | 28 |

---

[1] As background, three of the robberies, including the one to which the defendant pleaded guilty, were charged by the Queens County District Attorney's Office, and were later dismissed. One of the robberies was charged by the Kings County District Attorney's Office, and the government understands that it remains pending in the state.

Stipulated Conduct (Count One):  February 17, 2023 Hobbs Act Robbery

| | | |
|---|---|---:|
| Base Offense Level (§ 2B3.1(a)) | | 20 |
| Plus: | Dangerous Weapon Otherwise Used (§ 2B3.1(b)(1)(G)) | +4 |
| Total: | | 24 |

Stipulated Conduct (Count Two): February 20, 2023 Hobbs Act Robbery

| | | |
|---|---|---:|
| Base Offense Level (§ 2B3.1(a)) | | 20 |
| Plus: | Dangerous Weapon Otherwise Used (§ 2B3.1(b)(1)(G)) | +4 |
| Total: | | 24 |

Stipulated Conduct (Count Four): February 25, 2023 Hobbs Act Robbery

| | | |
|---|---|---:|
| Base Offense Level (§ 2B3.1(a)) | | 20 |
| Plus: | Dangerous Weapon Otherwise Used (§ 2B3.1(b)(1)(G)) | +4 |
| Total: | | 24 |

Multiple Count Analysis (§§ 3D1.1 - 3D1.4)

| | | Level | Units |
|---|---|---|---|
| Highest Adjusted Offense Level: | | 28 | |
| Count Three: | | 28 | 1 unit |
| Stipulated Conduct – Count One: | | 24 | 1 unit |
| Stipulated Conduct – Count Two: | | 24 | 1 unit |
| Stipulated Conduct – Count Four: | | 24 | 1 unit |
| Total Units: | | | 4 units |
| Plus: 4 Levels (U.S.S.G. § 3D1.4) | | | +4 |
| Total: | | | 32 |

See PSR ¶¶ 17-47.  After accounting for acceptance of responsibility, the defendant has an offense level of 29, id. ¶¶ 48-51, which, with a criminal history category of I, provides for an advisory Guidelines range of 87-108 months in custody, id. ¶ 95.

The defendant stipulated to the above Guidelines calculation in the plea

agreement, but he reserved the right to argue that a three-level enhancement rather than a four-level enhancement applies to Count Three with respect to the degree of bodily injury to Victim-3. The government agrees with Probation that a four-level enhancement applies. Specifically, Guideline 2B3.1(b)(3)(B) provides for a four-level enhancement if a victim suffers "Serious Bodily Injury." Guideline 1B1.1 defines this term to mean "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.

As explained above, Victim-3 sustained serious lacerations to his arm and back that required medical intervention including hospitalization. Indeed, Victim-3 was hospitalized for five hours for trauma care, which required, among other things, that an IV be inserted, that he undergo x-rays and a CT scan, and that he receive sutures to close his wounds. Because there is no dispute that Victim-3 was hospitalized, see Def. Mem. at 9 (acknowledging that the stabbing "requir[ed] the driver's hospitalization"), and hospitalization falls squarely within the meaning of serious bodily injury, a four-level enhancement is warranted.[2] See also, e.g., United States v. Shi Yong Wei, 373 F. App'x 121, 123 (2d Cir. 2010) (stating that "[w]here a victim has been beaten bloody and unconscious, requiring emergency hospitalization (even briefly) and stitches, any reasonable person would conclude that the injury caused 'extreme physical pain'"); United States v. Corbin, 972 F.2d 271, 272 (9th Cir. 1992) (affirming serious bodily injury enhancement where victim was struck twice in the head, causing a laceration that required sutures to close).

III.    The Appropriate Sentence

The government submits that the Section 3553(a) factors counsel in favor of a sentence within the advisory Guidelines range of 87 to 108 months in custody.

First, the nature and circumstances of the defendant's offenses require a serious sentence. See 18 U.S.C. § 3553(a)(1), (a)(2)(A). The defendant engaged in a pattern of violent, premeditated conduct, targeting victims over the course of four separate incidents. Each time, the defendant used a knife to instill fear and compliance. Indeed, on one occasion, the defendant stabbed Victim-3 repeatedly with a knife – causing him to be hospitalized for trauma care, and leaving him with physical and emotional scars. Unfazed, the defendant then immediately turned around and committed *another* knifepoint robbery. This conduct is very serious and requires commensurate punishment.

Second, a serious sentence is needed to provide specific deterrence. See 18 U.S.C. 3553(a)(2)(B). Since his incarceration at the Metropolitan Detention Center, the defendant has engaged in repeated misconduct, including additional violence. The defendant has

---

[2]    None of the cases the defendant cites counsels a different result. In United States v. Jackson, 918 F.3d 467 (6th Cir. 2019), the court applied the bodily injury enhancement, but the victim "did not seek medical attention for his injuries," which is a stark contrast to the defendant's hospitalization here. In United States v. Dortch, 628 F.3d 923 (7th Cir. 2010), the court did not actually decide whether the victim's injury constituted bodily injury or serious bodily injury. And United States v. Eubanks, 593 F.3d 645 (7th Cir. 2010), notes only that one of the victims there required "medical attention"; it does not address emergency hospitalization, as occurred with Victim-3 in this case.

5

sustained approximately twelve infractions, including for the following actions:

- On February 3, 2025, the defendant engaged in a physical altercation with another inmate, which he initiated by "sp[itting] bodily fluids at" the other inmate;

- On March 1, 2025, the defendant yelled at an officer because his meal was late, telling him, among other things, "I know your family, I'm gonna catch you outside and shoot you in the head, I know where you are from," and "bend down here and suck my dick through this slot you fagg*t";

- On December 19, 2025, the defendant and another inmate engaged in a physical altercation in which they punched the head and upper torso of a third inmate; and

- On May 9, 2026, just over a month ago, the defendant was captured on a recorded jail call acknowledging to his cellmate's father that he was forcing his cellmate to give him money, stating that the payment was necessary to ensure his cellmate's safety and wellbeing.

It is clear from the defendant's actions that he continues to refuse to obey the law, reflecting a real need for deterrence.

Third, a serious sentence is needed to provide general deterrence. See 18 U.S.C. 3553(a)(2)(B). Much like those committed by the defendant, robberies routinely target vulnerable members of our society, depriving them of much-needed funds, and impairing their ability to continue to work the same jobs in the future. Taxi drivers are uniquely vulnerable to robbery and other violent crime, and research shows that a significant portion of such drivers will face violence during their driving careers. See, e.g., Work-Related Violence Experienced By Urban Taxi Drivers, National Library of Medicine, https://pubmed.ncbi.nlm.nih.gov/25331679/. Recent incidents in New York City confirm that this danger is ongoing, as taxi drivers continue to be carjacked at gunpoint, robbed, and assaulted by armed assailants. See, e.g., Man Charged After NYC Taxi Driver Carjacked at Gunpoint in Midtown Manhattan, ABC 7 News (Mar. 22, 2026), https://abc7ny.com/post/nyc-taxi-driver-carjacked-gunpoint-midtown-manhattan-suspect-apprehended-downtown/18749866; Taxi Driver Robbed at Knifepoint by Passenger in Norwood, News12 The Bronx (Oct. 14, 2025), https://bronx.news12.com/taxi-driver-robbed-at-knifepoint-by-passenger-in-norwood; NYC Livery Cab Driver Recounts Near Death Experience After Passenger Tried to Rob Him, CBS News (Mar. 24, 2025), https://www.cbsnews.com/new york/news/brooklyn-livery-cab-driver-shot-canarsie-nypd/. The sentence imposed must be sufficient to cause those who are currently engaged in, and those who are considering engaging in, such conduct to understand that serious consequences will follow.

Fourth, the Court should reject the defendant's argument that it should vary downward to account for the fact that the defendant served approximately ten months in state custody for these same offenses. The Bureau of Prisons will ordinarily apply a credit towards the defendant's federal sentence for the time he served in state custody for the same offense. The operable statute is 18 U.S.C. § 3585(b)(1), which provides that "[a] defendant shall be given

6

credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed." (emphasis added).  The Supreme Court has also held that the Bureau of Prisons is "the agency charged with administering the credit statute," Reno v. Koray, 515 U.S. 50, 60 (1995), and that § 3585(b) does not authorize a district court to award such credit at sentencing, see United States v. Wilson, 503 U.S. 329, 333-335 (1992) ("Congress has indicated that computation of the credit must occur after the defendant begins his sentence.  A district court, therefore, cannot apply § 3585(b) at sentencing.").  Granting the defendant a variance will therefore grant him an unwarranted windfall in contradiction to the governing statutory scheme.

Finally, to the extent the defendant argues that the Court should consider potential state sentences for robbery offenses in considering whether this sentence would constitute an unwarranted disparity, he is incorrect.  The defendant should be sentenced like others convicted of similar offenses in federal court.  Here, the Sentencing Commission's Judiciary Sentencing Information tool indicates that "[d]uring the last five fiscal years (FY2021-2025), there were 42 defendants whose primary guideline was §2B3.1, with a Final Offense Level of 29 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure.  For the 42 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 76 month(s) and the median length of imprisonment imposed was 82 month(s)."  See https://jsin.ussc.gov/analytics/ saw.dll?Dashboard.  This falls near the bottom of the defendant's applicable Guidelines range, making clear that a Guidelines sentence in this case would not create unwarranted sentencing disparities compared to similarly situated defendants.

IV.    Conclusion

For the foregoing reasons, the government respectfully submits that a sentence within the Guidelines range of 87-108 months' imprisonment would be appropriate and in the interests of justice in this case.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ Kamil R. Ammari
Kamil R. Ammari
Assistant U.S. Attorney
(718) 254-6075

cc:    Clerk of Court (DG) (By ECF)
Gary Villanueva, Esq. (By ECF)

7